GREENWOOD LEFLORE *vs.* OBADIAH JUSTICE.

A new trial will not be granted by the appellate court unless it is a very clear
case that justice has not been done in the inferior tribunal.

Every workman who contracts to do a piece of work, thereby impliedly warrants
that he will bring sufficient skill and dexterity to its performance, to complete
it in a just and workmanlike manner.

A. undertook to do a piece of work, in a workmanlike manner, " as well as any
other mechanic could." The work, when completed, would not answer the
end designed. Held, that A. was not entitled to recover for doing the work.

ERROR from the Carroll circuit court.

This was an action of assumpsit for work and labor done.
The facts of the case are sufficiently disclosed in the brief of
Mr. Thompson, and in the opinion of the court.

*Drake and Sheppard,* for plaintiff in error.

*W. G. Thompson,* for defendant in error.

The defendant in error instituted an action in assumpsit
against the plaintiff in error, in the Carroll circuit court, for a
balance of $112, on an account for $268, for work and labor at
$4 per day, for four and one-half days; and for constructing
running gear and press; and at the October term, 1842, recov-
ered judgment for $120 and costs of suit. The plaintiff in error
moved for a new trial, on the ground that the verdict was con-
trary to law and evidence, which motion was overruled, and
thereupon a writ of error was sued out to this court.

By the bill of exceptions taken to the judgment of the court
overruling the motion for a new trial, it appears Richmond Car-
roll testified that the plaintiff below had built running gear and
press on the plantation of the defendant; that the usual price
for such machinery was $250; that the plaintiff had done simi-
lar work for witness, and that he considered him a very good
workman. Witness, Cooper, testified that he had assisted the
plaintiff in building the running gear and press for defendant;

that during the progress of the work plaintiff was taken sick, but was able to lay off the work, which was executed according to his directions; that the workmen objected to the timber as not being sufficiently seasoned; but defendant's overseer insisted upon their going on with the work, and stated that if they would not do so, he should have to employ another mechanic, and that they must finish the work, if they had to do so on his own responsibility. Witness states that he was not a regular workman. Collins, another witness for plaintiff, gave in substantially the same evidence as the preceding witness.

The defendant's overseer testified in his behalf, that as agent for defendant, he employed the plaintiff in July, 1839, to build a screw and turning gear for a cotton gin, and contracted to pay him $250, for building good machinery, that would not need to be repaired continually, and in ample time for ginning all the crop of that year. Plaintiff contracted to build the machinery in a workmanlike manner, and within that time. Plaintiff selected the timber himself for the work, and superintended the drying of it. He was taken sick during the progress of the work, and it was finished by Collins & Cooper, under his directions. Witness furthermore stated, that the machinery commenced tumbling to pieces immediately after it was put in operation; and that seventy-five or one hundred bags of seed cotton were in the press before the gin was ready; and that the machinery required constant repairing. Plaintiff urged, as an excuse for the defectiveness of the work, that he was sick, and could not attend to it properly. But he failed to repair it, although he was frequently applied to for that purpose. Witness further stated, that with the old screw he usually packed twenty bales of cotton a day; but with the one built by plaintiff he could not pack more than twelve. He pointed out defects in the construction of the work, whilst it was in progress, but plaintiff insisted that it would do, &c. Gatewood, another witness for defendant, stated that he was a gin-wright; that he had been employed to repair the machinery, &c., built by plaintiff for defendant, in 1839; that he had to make material alterations in the work, constructing some parts of it entirely anew; that

in the following season he had pulled down the press, and built a new one; that the defects in the machinery were owing to its having been badly constructed; that good machinery for running gear and press, for a gin, would last from four to seven years.

This cause turns altogether upon testimony. The facts were all fairly before the jury, and it is submitted whether this honorable court will interfere with the discretionary power of the court below to grant or to refuse new trials in such cases, which involve no question of law in respect to which the jury might be misguided.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an action of assumpsit, brought by Justice against Leflore, to recover for erecting the machinery and press of a cotton gin. After one mis-trial, a verdict was rendered in favor of the plaintiff, for $120, part of the price having been paid. The defendant moved for a new trial, which was refused. The whole evidence was then embodied in a bill of exceptions, and the case brought by writ of error to this court.

There was no instruction asked of the court, and the sole error assigned, is the refusal to grant the new trial.

It is the peculiar province of the jury, to determine upon the evidence; and it must be a very clear case, in which this court will set aside their finding. Yet, if from a view of the whole testimony in reference to the law which must govern the case, the court is satisfied that justice has not been done, it is our duty to grant a new trial.

Every workman who contracts to do a piece of work, it would seem, engages to bring sufficient skill and dexterity to its performance, to complete it in a just and workmanlike manner. The law implies a warranty on his part, to this extent. Chitty Con. 356. *Jones* v. *Bright*, 5 Bing. 533. But, in addition to this implied warranty, the evidence in this case is, that the plaintiff "agreed, that, for the sum of $250, he would build as good running gear and screw for the gin as any other mechanic could, and that it should be put up in a workmanlike manner."

Here, then, is an express warranty for the performance of the work in a particular way. With a proper understanding on the part of the jury, of the effect in law, of this warranty, we think they would have arrived at a different conclusion.

It may be necessary for us to examine the evidence somewhat in detail. The plaintiff first proved that he was considered a good workman, by those who had employed him. He next proved that he was taken sick during the progress of the work, and that the overseer of the defendant pressed him to proceed and finish it—that he was able to lay it off and give directions, and that two young men who worked with him, went on with the work and finished it. They complained that the timber was not sufficiently seasoned, but the overseer told them to do the work on his responsibility, and that if they did not do it, he would have to employ another mechanic.

One of these young men, who was examined as a witness, stated that he was not a regular workman or gin-wright, but that he had worked with his father, who was. This was the testimony on the part of the plaintiff. The defendant then proved that the plaintiff had represented himself to be a good workman, and able to make good machinery and screw; and that the contract was entered into, as above stated. He also proved that he furnished the plaintiff with a hand to attend to the kiln in drying the timber for use, and that the plaintiff afterwards dismissed him, saying it was sufficiently dried. He also proved, that after the work was completed he attempted to put the gin in operation, and that the machinery commenced tumbling to pieces in five minutes—that the cog-wheel did not go round the first time before the band-wheel braces began to fall, and the machinery required constant repairing. He also proved, that Justice acknowledged the imperfect execution of the work and promised to repair it, but after repeated applications, failed to do it. He then proved by Gatewood, a gin-wright, that he had been employed to repair the machinery, and found it necessary to take out the drum-wheel, trundle-head and shaft, and build them entirely anew. This witness pointed out other defects, and stated that they proceeded not from the want of seasoning of

the timber, but from defects in the workmanship—that he had repaired the press, and the following season had pulled it down and built an entirely new one—that good running gear of a gin and a press would last from four to seven years.

Here, then, was direct, positive and uncontradicted evidence, that the work was performed in an imperfect manner—that there was a breach of the contract and of the warranty by the plaintiff, and a failure to come up to the representations which he had made of his own qualifications.

It is the usual and more correct practice, for one or both of the parties to ask such instructions of the court below, to the jury, as are deemed necessary to guide them in their deliberations. But if no charge is asked or given, and the case comes up as this has done upon a bill of exceptions embracing the whole evidence, this court must consider whether the law which controls the cause has been properly understood and applied to the facts by the jury. This task is a delicate and difficult one, but it must be performed. The inclination of the court will be to sustain the verdict, if it can be done on correct legal principles; but if it cannot, we must give the parties another trial.

In this case, we have come to the conclusion that there is error in the finding; we therefore reverse the judgment, and award a new trial.